# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| L.R. Smith and the Brotherhood of Locomotive Engineers and Trainmen, | ) ) ) | |
| Plaintiffs, | ) ) | No. 10 C 03129 |
| v. | ) ) | Judge Edmond E. Chang |
| Union Pacific Railroad Company, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff L.R. Smith was a locomotive engineer for Defendant Union Pacific Railroad. After Smith failed a random alcohol test while on the job, he and the railroad entered into a 'last chance' agreement providing for, among other things, Smith's entry into an alcohol treatment program. But the program counselor reported that Smith did not comply with the program, and Union Pacific fired him. To dispute the dismissal, Smith filed a claim with the National Railroad Adjustment Board. The Board ruled that the railroad permissibly fired Smith without a disciplinary hearing because he had agreed to waive that hearing in the last chance agreement. Plaintiff then filed this suit, alleging violations of the Railway Labor Act, 45 U.S.C. § 153, and of his constitutional right to due process. Union Pacific moves to dismiss [R. 12] for lack of subject matter jurisdiction and for failure to state a claim. As explained below, subject matter jurisdiction is secure under the Railway Labor Act, but the Court agrees that Smith has failed to state a claim as a matter of law, and thus the motion to dismiss is granted.

# I.

Smith began working for Union Pacific in 1995. R. 1, Exh. A at 1.[1]  In January 2005, when he was a locomotive engineer, Smith was given a random drug and alcohol test while on the job.  *Id.*; R. 1, Exh. D at 2.  He tested positive for alcohol, in violation of Union Pacific's drug and alcohol policy.  R. 1, Exh. A at 1, Exh. D at 2.  Union Pacific offered, and Smith accepted, a 'last chance' agreement wherein he waived a formal investigation and hearing and accepted dismissal, but in exchange he would get a second chance: he would be reinstated to a 12-month probationary period after participating in a treatment program, and he would be required to participate in ongoing treatment during the probation.  R. 1, Exh. A at 1-2.  Under the agreement, Smith made a number of promises, including to become alcohol and drug free; participate in counseling, treatment, and followup; and to adhere to agreements in a "personal plan" designed by an Employee Assistance Program (EAP) Manager.  R.1, Exh. C.  If Smith failed to fully comply with the conditions of the agreement, Union Pacific would return him to dismissed status.  R. 1, Exh. A at 2.

Smith also agreed that his return to work would be governed by a "Companion Agreement," which stated in relevant part:

> 2.  Participation in the Rule G R/E [Rehabilitation/Education] Program shall continue for a period of 12 months unless the employee elects to withdraw from the Program o[r] fails to follow the course of treatment established by the Employee Assistance Counselor.

---

[1]Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.  The complaint is entry number 1 on the docket.

\* \* \*

> If, at any time during the 12-month period referred to in paragraph 2 above, the employee fails to follow the course of treatment established by the Counselor, the Carrier shall remove the employee from the Program. If the employee has been returned to service, the Carrier shall, *without the necessity of further disciplinary proceedings*, also remove the employee from service and the employee shall revert to the status of a dismissed employee.

R. 1, Exh. A at 2-3 (emphasis added). As a pre-cursor to the Companion Agreement, the last chance agreement also spelled out the consequences of failing to comply with the treatment program during the Companion Agreement's duration: "When subject to the conditions of a Companion Agreement, failure to comply with these instructions during the 12 month probationary period may result in your immediate return to dismissed status *without benefit of a Company Disciplinary Hearing*." *Id.* at 2 (emphasis added).

With these agreements in place, Smith returned to service on October 17, 2005. R. 1, Exh. A at 3. But on February 6, 2006 – around four months into the probationary period – the EAP Manager informed Union Pacific that Smith had violated the terms of the agreement. *Id.* at 3. The next day, Union Pacific sent a letter to Smith stating that he was being returned to "dismissed" status, that is, he was fired. *Id.* Neither Union Pacific nor the EAP Manager provided Smith with the details of the violation. *Id.* at 4-5. Smith and his union (and now co-plaintiff), the Brotherhood of Locomotive Engineers and Trainmen, filed a claim with the National Railroad Adjustment Board. R. 1, Exh. E. After considering written and oral arguments, the Board upheld the dismissal. R. 1, Exh. A at 6.

In May 2010, Smith filed this suit, seeking to overturn the Board's ruling. Plaintiff alleges that the Board violated the Railway Labor Act and his right to due process. Union Pacific filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1).

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that the rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'

"*Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 129 S. Ct. at 1950. When reviewing a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court should generally accept as true all well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.1999).

## III.

Union Pacific argues that subject matter jurisdiction is lacking because Plaintiff's petition for review does not successfully state a claim under the Railway Labor Act. Although the Court agrees that the petition fails to state a claim (as discussed below in Section IV), that is a decision on the *merits* and does not undermine subject matter jurisdiction under the Act, as amended. Congress enacted the Act to promote the efficient resolution of labor disputes in the railroad industry via agreement and arbitration. *Union Pacific Railroad v. Brotherhood of Locomotive Engineers and Trainmen*, 130 S. Ct. 584, 591 (2009). Over time, the Act was amended to require arbitration of so-called "minor" disputes[2] by the National Railroad Adjustment Board. Before a party can demand arbitration, however, the Act mandates that the parties first exhaust their collective bargaining agreement's dispute-resolution

---

[2]"Minor" disputes are those disputes arising from the *application* of collective bargaining agreements in specific situations, rather than from the *formation* of such agreements; the latter disputes are labeled "major." *Union Pacific*, 130 S. Ct. at 591 & n.1.

procedures. *Id.* This pre-arbitration stage of the process is known as the "on-property" proceeding, and if that fails to solve the dispute, the Act requires parties to engage in settlement talks "in conference." *Id.* at 591-92. If the parties cannot agree in conference or "in the usual manner up to and including the chief operating officer of the carrier designated to handle [minor] disputes," either party may refer the matter to the Board for arbitration. *Id.* at 592.

In 1966, Congress amended the Act to provide for judicial review of the Board's arbitration orders. 45 U.S.C. § 153 First (q). An "aggrieved" party – either the employee or the carrier – may file a petition for review of the Board's order in "any United States district court" where venue is proper.[3] "The court shall have jurisdiction to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for further action as it may direct." *Id.* at § 153 First (q).[4]

Despite this jurisdictional grant, Union Pacific maintains that this Court does not have subject matter jurisdiction to review the Board's decision because the Act provides for only three limited grounds for setting aside the Board's order, and the order does not, Union Pacific contends, run afoul of any of those grounds. R. 12 at 3. But this argument runs off the rails because it confuses subject matter jurisdiction

---

[3]Venue over petitions for review is controlled by 45 U.S.C. § 153(p). In this specific case, Plaintiff alleges, and Defendant agrees, that venue is proper in the Northern District because the railroad operates through the district.

[4]The references in sub-section (q) to orders of a "division" arise from the Act's establishment of four different "divisions" on the Board, each with separate jurisdiction over different categories of employees. § 153 First (h).

with the merits: "If Congress has authorized federal courts to resolve particular claims, and if the claim presents a case or controversy within the scope of Article III, then federal courts have subject-matter jurisdiction." *Moore v. Olson*, 368 F.3d 757, 760 (7th Cir. 2004); *see also Morrison v. National Australia Bank*, 130 S. Ct. 2869, 2877 (2010) ("Subject matter jurisdiction . . . refers to a tribunal's power to hear a case. . . . It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief.") (internal quotations and citations omitted); *Quinn v. Gates*, 575 F.3d 651, 654-55 (7th Cir. 2009). Here, the Act's § 153 First (q) explicitly vests adjudicatory power in the district courts to review Board decisions, and although there are only limited grounds for overturning an order of the Board, those limitations do not undermine power to hear the case.

## IV.

Secure in our subject matter jurisdiction, the Court now turns to the merits of the case. In the arbitration under review, the Board decided that the last chance agreement and the Companion Agreement (which governed the probationary period) both explicitly provided for immediate dismissal *without* a disciplinary hearing if Smith failed to follow the Employee Assistance Program counselor's directives. R. 1, Exh. A at 4. Specifically, the Board relied on the section of the last chance agreement dictating that "failure to follow these instructions [including participating in the program] during the 12 month probationary period may result in your immediate return to dismissed status *without benefit of a Company disciplinary hearing*." R. 1, Exh. A at 4 (emphasis added in Board decision). And the Board relied on the

7

Companion Agreement's similar provision that "[i]f, at any time during the 12-month period . . . the employee fails to follow the course of treatment established by the Counselor, the Carrier shall remove the employee from the Program [and i]f the employee has been returned to service, the Carrier shall, *without the necessity of further disciplinary proceedings*, also remove the employee from service *and the employee shall revert to the status of a dismissed employee*." *Id.* (emphasis added in Board's decision). In light of the employee's agreement to dismissal without the benefit of disciplinary proceedings, the Board reasoned, the Employee Assistance Program counselor need not supply details of any violation of the conditions of Smith's return-to-work program: "That was EAP's call and the parties agreed to live with that determination without regard to whether EAP disclosed the details of Claimant's non-compliance to the Carrier." *Id.* at 5. The Board then cited and discussed other Board decisions which had similarly held that disciplinary hearings were unnecessary in where the employee had agreed to waive further disciplinary hearings in exchange for another chance. *Id.* at 5-6. Accordingly, the Board denied Smith's claim.

In the complaint, Smith alleges three reasons why the Board's decision should be overturned. R.1 at 2-7, ¶¶ 39-50. First, the Board exceeded the scope of its jurisdiction when it re-construed the dispute from a "disciplinary" case to a "contract" case. *Id.* at 5-6, ¶¶ 39-42. Second, the Board's interpretation of the last chance agreement was baseless in fact and without reason. *Id.* at 7, ¶¶ 47-50. Third, the Board's decision violated Smith's due process rights by placing the burden of proof on Smith. *Id.* at 6-7, ¶¶ 43-46.

These allegations, however, do not state a claim under the Act's standard of limited review of Board decisions, a standard which is "among the narrowest known to the law." *International Bhd. Of Elec. Workers v. CSX Transp.*, 446 F.3d 714, 717 (7th Cir. 2006) (citing *Union Pacific Railroad v. Sheehan*, 439 U.S. 89, 91 (1978)). Indeed, § 153 First (q) deems the Board's decision "conclusive" except under the following three circumstances: [1] for "failure of the division to comply with the requirements of this chapter [the Act], [2] for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or [3] for fraud or corruption by a member of the division making the order." 45 U.S.C. § 153 First (q). In light of the limited grounds for setting aside a Board decision, none of Plaintiff's allegations here state a claim.

## A.

First, Smith argues that the Board exceeded the scope of its jurisdiction because it improperly treated the dispute as a "contract" case. R. 1 at 5-6, ¶¶ 39-42; R. 15, Pl.'s Resp. at 13-14. According to Smith, "First (i) limits the [Board] to hearing cases that have been handled by parties in the usual manner." *Id*. at 13. Smith then argues that because the dispute involved a "disciplinary" action against him, the Board should have treated the dispute as a disciplinary case. *Id.* From this premise, Smith leaps to the conclusion that the Board did not decide a "disciplinary" case but instead impermissibly decided a "contract" case. *Id.* at 14.

But there is no provision in the Railway Labor Act that requires the Board to categorize disputes as "discipline" cases versus "contract" cases, nor does the Act itself

dictate different treatment depending on these categories.  Section 153 First (i) covers how cases should be treated *prior* to arbitration, and says nothing about how disputes are characterized.  The relevant portion of § 153 First (i) reads:

> The disputes between an employee . . . and a carrier . . . growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

45 U.S.C. § 153 First (i).  This section does not describe how the Board is required to treat disputes, let alone describe and categorize disputes into disciplinary versus contract disputes.  Instead, it explains that disputes must first be handled by the parties, on-property, in the "usual manner."  Smith reads this provision to mean that because his own dispute involved a disciplinary issue during the on-property proceedings, the Board is barred from reviewing it as a contract case, as if a disciplinary dispute cannot as a matter of law involve interpretation of a contract.  But § 153 First (i) simply does not support that view.  Here, the Board appropriately engaged in contract interpretation – specifically, whether or not the last chance agreement and the Companion Agreement required anything more, such as a full-blown disciplinary proceeding, before Smith's dismissal once the Employee Assistance Program manager reported a violation.  Therefore, there was no violation of § 153 First (i), and the Board acted within its jurisdiction.

**B.**

10

Next, Smith contends that the Board acted without basis in fact and without reason. The parties agree that the Board based its decision to uphold Smith's dismissal on a reported violation of the last chance agreement. The disagreement is over whether the EAP manager's report is enough by itself to return Smith to dismissal status. R.15 at 8; R. 12 at 11. Smith argues that because the report is not sufficient alone, the Board dispensed its own form of industrial justice by issuing a decision that was baseless in fact and completely without reason. R.1 at 7, ¶¶ 47-50.

As described above, however, the Board did engage in a reasoned analysis of the last chance agreement and the Companion Agreement. The Board pointed to the sections in both agreements providing for return to dismissal status without the need for a disciplinary proceeding if the EAP manager reported non-compliance with the treatment program. The Board cited and discussed similar Board precedent. The Board confronted head-on the employee's arguments. The Board's decision cannot accurately be described as wholly without reason.

Furthermore, it is unclear how this argument of Smith's fits under the three limited grounds for reviewing a Board decision. To the extent that Smith is presenting a factual argument, district courts are prohibited from reviewing the sufficiency of the evidence presented to the Board. *Kotakis v. Elgin, Joliet & E. Ry.*, 520 F.2d 570, 575 (7th Cir. 1975) (noting that analyzing the strength of the evidence is "exactly the type of determination that Congress intended to be left to the Adjustment Board without judicial review"). So long as it articulated some reason – and it surely did – the Board's decision was not "baseless in fact or reason."

### C.

Smith's due-process challenge is not so much a challenge directed at the procedures he received from the Board – the Board gave him notice and an opportunity to be heard on the question of whether he should have received a disciplinary proceeding – but is instead another form of the argument that he was entitled to a full-blown hearing on whether he failed to comply with the treatment program. In support of the due-process argument,[5] Smith argues that he should not bear the burden of proving that he did not violate the treatment program, R.1 at 6-7 ¶46, and most importantly, that he was entitled to an evidentiary hearing regarding the reported violation, R.15 at 11. But Smith waived whatever right he had to a disciplinary proceeding concerning the treatment program the moment he signed the last chance agreement and entered into the Companion Agreement. His dismissal was based partly on the original violation – the instance of on-the-job positive test for alcohol in violation of company policy. In exchange for a second chance, Smith traded away his right to a disciplinary hearing, and agreed to a return to dismissal status – again, without a disciplinary hearing – if the EAP manager reported non-compliance with the treatment program. R. 1, Exh. A at 4, 6.

---

[5]The Supreme Court recently declined to decide whether a reviewing court may set aside a Board order as violative of due process if the order otherwise falls outside the grounds for review in § 153 First (q). *Union Pacific*, 130 S. Ct. at 596. The Seventh Circuit does permit for due-process review, beyond § 153 First (q), *e.g.*, *Pokuta v. Trans World Airlines*, 191 F.3d 834, 839 (7th Cir. 1999), and the Supreme Court's decision *not* to decide the issue does not overturn that line of Circuit precedent.

Smith's explicit agreement to forgo the benefit of a disciplinary hearing during the probationary period for treatment program non-compliance fatally undermines the horribles he parades out in support of his argument. Smith urges the Court to "[i]magine if criminal defendants had to prove their innocence instead of the prosecutor proving guilt." R. 15 at 14. And because there was no evidentiary hearing at the on-property proceedings, Smith argues, the Board was unable to weigh the credibility or assess the circumstances behind the alleged violation. "In the absence of such evidence," Smith argues, "one's mind can wander through endless hypotheticals involving circumstances in which that evidence was suspect, a result of an innocent mistake, a misunderstanding, a miscommunication, or even an outright fabrication." R.15 at 10. Smith believes he is entitled to the "how, where, and why" of the alleged violation. *Id.* "So, Union Pacific would have, it is entirely lawful for it to terminate a worker like Smith, introduce absolutely no factual evidence at the on-property hearing while subsequently maintaining his termination, and then for the NRAB, without any evidence as to why the worker's termination was justified, to uphold the railroad's decision." *Id.* at 11. But once he entered into the last chance agreement and the Companion Agreement, Smith was subject to dismissal without the benefit of a formal hearing if the EAP manager reported non-compliance with the treatment program.[6]

---

[6]Furthermore, the rhetorical force of Smith's arguments is weakened by the Seventh Circuit's holding that due process is *not* required during the on-property proceedings. *Elmore v. Chicago & Illinois Midland Railway Company*, 782 F.2d 94, 96 (7th Cir. 1986). Smith attempts to sidestep *Elmore* by arguing that it is no longer good law. R.15 at 11 ("To the extent that this rule may no longer apply . . ."); *id.* at n.3 (""to the extent that this caveat in *Elmore* has been interpreted out of the limitation of the application of Due Process to the on-property hearing, Plaintiffs contest the continued validity of that rule"). But Smith neither cites any

Whatever reason Smith had for entering those agreements (including securing a second chance), he traded away the right to disciplinary proceedings and cannot now claim that he never received that right.[7]  Perhaps employees faced with similar circumstances in the future will attempt to negotiate last chance agreements with different provisions, but that does not change the outcome in this case.

## V.

For the reasons discussed above, the Court grants Union Pacific's motion to dismiss [ 11] the complaint for failure to state a claim.

ENTERED:

Honorable Edmond E. Chang
United States District Judge

Date: April 4, 2011

---

cases nor explains any reasons to doubt the continued vitality of *Elmore.*

[7]The third ground for setting aside a Board order, "fraud or corruption by a member" of the Board is mentioned once (aside from a paraphrase of § 153 First (q)) in Plaintiff's complaint: "Without taking discovery, Plaintiffs cannot know whether Smith was the victim of fraud or corruption." R. 1 at ¶ 32.  Smith does not otherwise refer to fraud or corruption in responding to the motion to dismiss, and in any event this allegation is doomed for lack of specificity, Fed. R. Civ. P. 9(b).